10 P.3d 1193

**STATE of Arizona, Respondent,**

v.

**Victor Gene DONALD, Petitioner.**

**No. 1 CA–CR 97–0551–PR.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 26, 2000.

---

Richard M. Romley, Maricopa County Attorney by Gerald R. Grant, Deputy County Attorney, Phoenix, Attorneys for Respondent.

Victor Gene Donald, In Propria Persona, Yuma, for Petitioner.

## OPINION

FIDEL, Judge.

¶ 1 Victor Gene Donald petitions for review of the trial court's summary dismissal of his petition for post-conviction relief. He contends that he rejected a plea agreement because his attorney provided ineffective assistance by failing to properly explain the relative merits of the plea offer in comparison with the potential sentence that he faced if convicted of the charges.[1] The trial court summarily dismissed Donald's petition, reasoning that his claim of ineffective assistance of counsel was not colorable because,

> Even if his counsel misinformed him of the consequences of the offer, it is too late. Having rejected the offer, Mr. Donald proceeded to trial and lost. Whether to offer a plea agreement is a prosecutorial function. This court is not empowered to order the state to make the same plea offer again when the offer was not withdrawn for impermissible reasons, such as prosecutorial vindictiveness,

---

1. Donald also argues pursuant to *State v. Tarango*, 185 Ariz. 208, 914 P.2d 1300 (1996), that the trial court improperly subjected him to both an enhanced sentence under A.R.S. § 13–604 and a flat time sentence under A.R.S. § 13–604.02(B). His position has been rejected, however, in *State v. Raboy*, 193 Ariz. 396, 397, ¶ 8, 972 P.2d 1032, 1033 (App.1998), and *State v. McDonald*, 192 Ariz. 44, 46, ¶ 12, 960 P.2d 644, 646 (App.1998), where we held that both statutes may apply to a given case. Thus, we summarily affirm the trial court's summary dismissal of this part of his petition and address the remainder of this opinion only to his ineffective assistance claim.

We grant review and remand for an evidentiary hearing regarding Donald's ineffective assistance of counsel claim. In the course of our opinion, we consider whether the loss of a favorable plea bargain because of ineffective assistance of counsel inflicts a constitutionally significant injury upon a defendant who has received a fair trial. Answering that question in the affirmative, we also discuss and reject the trial court's assumption that it lacks the power to fashion a remedy in the event that Donald's ineffective assistance claim proves true.

## I. BACKGROUND

¶ 2 After indicting Donald for robbery, a class 4 felony, the State offered to allow him to plead guilty to robbery, a class 4 felony, with the allegation of one prior felony conviction. The plea offer stated that the maximum sentence would be eight years; the presumptive sentence, six years; and the minimum sentence, four years. The offer included that Donald would be eligible for "soft time"—parole after serving one-half of the sentence imposed. The State agreed not to allege an additional prior felony conviction or that Donald committed the charged offense while on parole. Donald's attorney presented the offer but failed, according to Donald, to adequately explain its benefits and risks versus those of proceeding to trial. As a result, Donald claims, he rejected an advantageous offer that he would have accepted had he been adequately informed.

¶ 3 Before trial, claiming irreconcilable differences with counsel, Donald moved to represent himself. The court granted the motion and appointed the same lawyer as advisory counsel. A second lawyer soon replaced the first as advisory counsel and eventually was appointed to represent Donald at trial.

¶ 4 At a jury trial in October 1993, Donald was convicted of robbery. The jury also found that he had two prior convictions for armed robbery. At the sentencing hearing, the trial court made the further finding that Donald had committed the present offense while on parole. Pursuant to A.R.S. §§ 13–604 and 13–604.02, the court sentenced Donald to a "flat term" of ten years (day-for-day time).

¶ 5 After this court affirmed his conviction and sentence by unpublished decision and the supreme court denied review, Donald filed notice of post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. And after his appointed counsel filed notice that she had reviewed the record and found no claims to raise, Donald filed a *pro per* petition for post-conviction relief.

¶ 6 In his petition, Donald raised two issues. We have summarily disposed of one of them. *See supra* note 1. The question that remains is whether Donald's first appointed attorney was ineffective because he failed to properly explain and compare the terms of the plea agreement offered by the State and the sentencing consequences if Donald were found guilty after trial. In support of his ineffective assistance claim, Donald attached an affidavit to his petition, stating under oath (1) that not until he received and examined his pre-trial file in drafting his petition for post-conviction relief did he realize the plea offered "soft time" (one-half time); (2) that until he examined the file, he thought the plea offered "hard time" (two-thirds time); and (3) that if counsel had properly explained that he faced a flat day-for-day sentence if convicted following trial, he would have accepted the plea offer. In a supplement to the petition, he attached a copy of the proffered plea and a letter from the prosecutor to his attorney confirming that the State offered not to allege one of the two prior offenses or that Donald committed the current offense while on parole. Donald also submitted portions of the sentencing hearing transcript that reveal the prosecutor's confusion regarding the appropriate sentence for Donald: the prosecutor informed the court that Donald faced hard time; defense counsel, however, acknowledged that Donald faced a flat time sentence because he committed the offense while on parole.

¶ 7 After the trial court summarily dismissed Donald's petition and denied his motion for rehearing, Donald filed a timely petition to this court for review. We review a summary dismissal for abuse of discretion. *State v. Ketchum*, 191 Ariz. 415, 416, 956 P.2d 1237, 1238 (App.1997).

¶ 8 More specifically, we review whether Donald has presented a colorable ineffective assistance of counsel claim.[2] "A trial court may summarily dismiss a petition for post-conviction relief only if it determines that no 'material issue of fact or law ... would entitle [the petitioner] to relief.'" *Id.* (quoting Ariz. R.Crim. P. 32.6(c)). A defendant is entitled to an evidentiary hearing on a colorable claim—one that, "if defendant's allegations are true, might have changed the outcome." *State v. Watton,* 164 Ariz. 323, 328, 793 P.2d 80, 85 (1990) (citing *State v. Schrock,* 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986)).

## II. MAY A COLORABLE CLAIM ARISE FROM THE REJECTION OF A PLEA AGREEMENT?

¶ 9 The American Bar Association Standards for Criminal Justice require defense attorneys to "promptly communicate and explain to the accused all significant plea proposals made by the prosecutor." ABA STANDARDS FOR CRIMINAL JUSTICE, PROSECUTION FUNCTION AND DEFENSE FUNCTION, Standard 4–6.2(b) (3d ed.1993).[3] The explanation must suffice to permit the defendant to make a reasonably informed decision whether to accept or reject a plea offer. *See Hill v. Lockhart,* 474 U.S. 52, 56–57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (voluntariness of guilty plea depends on adequacy of counsel's advice). "[W]hether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case ... [and] counsel ... must give the client the benefit of counsel's professional advice on this crucial decision." *United States v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (quoting *Boria v. Keane,* 99 F.3d 492, 496–97 (2d Cir.1996)). To ensure that a defendant is adequately advised, "[d]efense counsel has a duty to communicate ... not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial." *Commonwealth v. Napper,* 254 Pa.Super. 54, 385 A.2d 521, 524 (1978) (citing A.B.A. PROJECT ON STANDARDS FOR CRIMINAL JUSTICE: STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION, (Approved Draft, 1971)).

¶ 10 Arizona courts recognize that a defendant may seek relief from a conviction on the basis that counsel's ineffective assistance induced a guilty plea. *See, e.g., State v. Ysea,* 191 Ariz. 372, 379, ¶¶ 23–24, 956 P.2d 499, 506 (1998); *State v. Anderson,* 147 Ariz. 346, 351–52, 710 P.2d 456, 461–62 (1985). But neither party cites, and we have not found, any published Arizona case addressing whether a defendant may seek relief from a conviction on the basis that counsel's ineffective assistance led the defendant to *reject* a plea agreement that the defendant otherwise would have accepted.

¶ 11 In a persuasive body of case law, all other jurisdictions that have considered the question have recognized that the right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently received a fair trial.[4]

---

2. Donald also contends that counsel's failure to advise him of the extent of punishment that he faced upon conviction violates his due process rights. We do not address this argument because we reverse and remand for an evidentiary hearing based on Donald's ineffective assistance of counsel claim.

3. Some courts have cited the American Bar Association Standards for Criminal Justice as affirmation that the failure to inform clients of plea offers and the significance of their contents falls below professional standards. *See Cottle v. State,* 733 So.2d 963, 966 (Fla.1999); *Lloyd v. State,* 258 Ga. 645, 373 S.E.2d 1, 2–3 (1988).

4. For cases discussing claims of ineffective assistance of counsel based on trial counsel's deficient advice leading a defendant to reject a plea, *see United States v. Day,* 969 F.2d 39 (3d Cir.1992) (attorney's substandard advice concerning sentencing guidelines and its resulting prejudice to the defendant constitutes a valid Sixth Amendment claim); *Toro v. Fairman,* 940 F.2d 1065 (7th Cir.1991) (defense counsel's incompetent advice to reject proposed plea agreement found objectively unreasonable; defendant failed to carry burden of proving prejudice); *Turner v. Tennessee,* 858 F.2d 1201 (6th Cir.1988) (incompetent advice to reject a plea offer may constitute a Sixth Amendment deprivation), *vacated on other grounds sub nom. Tennessee v. Turner,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989); *In re Alvernaz,* 2 Cal.4th 924, 8 Cal. Rptr.2d 713, 830 P.2d 747 (1992) (incompetent counseling as to the consequences of rejecting a plea offer may constitute a Sixth Amendment deprivation if defendant suffered prejudice); *Garcia v. State,* 736 So.2d 89 (Fla.Dist.Ct.App. 1999) (attorney's failure to give accurate advice

We agree with these courts in concluding that counsel's failure to provide competent advice to a criminal defendant concerning a plea offer constitutes deficient performance. *See, e.g., Day,* 969 F.2d 39.

¶ 12 In *Alvernaz,* the California Supreme Court analyzed in detail the reasoning underlying most of the earlier decisions on this subject. Citing statistics showing that most criminal cases are disposed of by guilty plea, the court observed that "plea bargaining is an integral component of the criminal justice system and essential to the expeditious and fair administration of our courts." 8 Cal. Rptr.2d 713, 830 P.2d at 752. Moreover, "it is the attorney, not the client, who is particularly qualified to make an informed evaluation of a proffered plea bargain." *Id.,* 8 Cal.Rptr.2d 713, 830 P.2d at 753. The court explained:

> The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions. It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered

a constitutional violation giving rise to a claim for relief from the guilty plea.

> . . . .

> We conclude, as have all federal and state courts presented with this issue, that the converse circumstances—where counsel's ineffective representation results in a defendant's rejection of an offered plea bargain, and in the defendant's decision to proceed to trial—also give rise to a claim of ineffective assistance of counsel. Both alternate decisions—to plead guilty or instead to proceed to trial—are products of the same attorney-client interaction and involve the same professional obligations of counsel. Application of the constitutional guarantee of effective assistance of counsel to the advice given a defendant to plead guilty, necessarily encompasses the counterpart of that advice: to reject a proffered plea bargain and submit the issue of guilt to the trier of fact.

*Id.,* 8 Cal.Rptr.2d 713, 830 P.2d at 753–54 (citations and footnote omitted).

¶ 13 The *Alvernaz* court rejected the argument that a defendant who declines a plea because of ineffective representation is relieved of prejudice if he or she subsequently receives a fair trial. *See id.,* 8 Cal.Rptr.2d 713, 830 P.2d at 754. Such a holding would

concerning the plea offer and the possibility of receiving a more severe sentence at trial along with defendant's proof of a reasonable probability of prejudice suffered entitled defendant to an evidentiary hearing); *People v. Curry,* 178 Ill.2d 509, 227 Ill.Dec. 395, 687 N.E.2d 877 (1997) (attorney provided defendant with erroneous advice concerning sentencing, defendant was prejudiced; thus, defendant established an ineffective assistance of counsel claim); *Williams v. State,* 326 Md. 367, 605 A.2d 103 (1992) (failing to inform defendant that he would receive a mandatory sentence at trial fell below professional standards); *Napper,* 254 Pa.Super. 54, 385 A.2d 521 (attorney's failure to counsel defendant on the terms of a plea offer after presenting it to him constitutes ineffective representation); *State v. Lentowski,* 212 Wis.2d 849, 569 N.W.2d 758 (1997) (erroneous advice regarding applicable defenses satisfies first prong of *Strickland* test).

Similarly, courts have held that an attorney's failure to inform a defendant of a plea offer, failure to act on a defendant's desire to accept a plea offered by the state, and failure to accurately inform a defendant of the consequences of withdrawal from a plea agreement constitute deficient representation by counsel. *See, e.g., Unit-*

*ed States v. Rodriguez Rodriguez,* 929 F.2d 747, 752–53 (1st Cir.1991) (failure to convey counteroffer and to provide adequate advice); *Lewandowski v. Makel,* 949 F.2d 884 (6th Cir.1991) (failure to accurately inform of consequences of withdrawal from plea); *Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir.1986) (failure to inform client of plea offer and involve client in the decision-making process); *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 438 (3d Cir. 1982) (failure to advise defendant of plea offer constitutes a gross deviation from accepted practice standards); *Beckham v. Wainwright,* 639 F.2d 262 (5th Cir.1981) (failure to accurately inform defendant of consequences of withdrawal from plea); *Cottle,* 733 So.2d 963 (failure to inform client of plea offer); *Lloyd,* 258 Ga. 645, 373 S.E.2d 1 (failure to inform of plea offer, even if counsel would have recommended against accepting plea, constitutes deficient performance); *Osborne v. Commonwealth,* 992 S.W.2d 860 (Ky. Ct.App.1998) (failure to act on defendant's desire to accept plea); *Larson v. State,* 104 Nev. 691, 766 P.2d 261 (1988) (encouraging defendant to withdraw plea to further attorney's personal ambitions constitutes inadequate representation); *Becton v. Hun,* 205 W.Va. 139, 516 S.E.2d 762 (1999) (failure to communicate plea offer).

deny defendants a remedy for the deprivation of the opportunity to plea bargain. *See id.* Further, it

> would seriously undermine the functioning of the plea negotiation process. As noted by one federal court: "To accept or to reject a plea offer presents a binary choice at a fork in the road; providing constitutional protection against an incompetent shove in one direction, but not against an equally incompetent shove in the other, may produce unwanted skewing of the results."
>
> . . . .
>
> The crucial decision to reject a proffered plea bargain and proceed to trial should not be made by a defendant encumbered "with a grave misconception as to the very nature of the proceeding and possible consequences."

*Id.* at 754–55 (quoting *Turner v. State,* 664 F.Supp. 1113, 1120 (M.D.Tenn.1987), and *Beckham,* 639 F.2d at 267. Thus, the court held that ineffective assistance of counsel that leads a defendant to reject a plea bargain is a constitutional violation that a fair trial does not remedy. *See Alvernaz,* 8 Cal. Rptr.2d 713, 830 P.2d at 755.

¶ 14 We recognize that a criminal defendant has no constitutional right to plea bargain. *See United States v. Osif,* 789 F.2d 1404, 1405 (9th Cir.1986); *State v. McKinney,* 185 Ariz. 567, 575, 917 P.2d 1214, 1222 (1996). But once the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer. *See Day,* 969 F.2d at 43; *Beckham,* 639 F.2d at 267; *Curry,* 227 Ill.Dec. 395, 687 N.E.2d at 887; *Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 754–55. Finding the reasoning we have quoted persuasive, we therefore join with *Alvernaz* and other courts that have addressed the issue and hold that a defendant may state a claim for post-conviction relief on the basis that counsel's ineffective assistance led the defendant to make an uninformed decision to reject a plea bargain and proceed to trial.

### III. THE ELEMENTS: DEFICIENT PERFORMANCE AND PREJUDICE

¶ 15 To prove ineffective assistance of trial counsel, a petitioner must show both deficient performance and prejudice. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ketchum,* 191 Ariz. at 416, 956 P.2d at 1238. We consider whether Donald made a colorable showing of each element in this case.

### A. Deficient Performance

¶ 16 To establish deficient performance during plea negotiations, a petitioner must prove that the lawyer either (1) gave erroneous advice or (2) failed to give information necessary to allow the petitioner to make an informed decision whether to accept the plea. *See, e.g., Hill v. Lockhart,* 474 U.S. at 58, 106 S.Ct. 366, 88 L.Ed.2d 203; *State v. Bowers,* 192 Ariz. 419, 422, ¶¶ 12–13, 966 P.2d 1023, 1026 (App.1998); *Toro,* 940 F.2d at 1067–68; *Day,* 969 F.2d at 42; *Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 755. This case presents a claim of the second sort.

¶ 17 To achieve a hearing on such a claim, a defendant must present more than a conclusory assertion that counsel failed to adequately communicate the plea offer or the consequences of conviction. A petitioner need not provide detailed evidence, but must provide specific factual allegations that, if true, would entitle him to relief. *See United States v. Hearst,* 638 F.2d 1190, 1194 (9th Cir.1980) (citing *Wagner v. United States,* 418 F.2d 618, 621 (9th Cir.1969)). Further, a defendant should support such allegations by sworn statements or provide a satisfactory explanation of their absence. In questions of post-conviction relief, however, "[w]hen doubts exist, 'a hearing should be held to allow the defendant to raise the relevant issues, to resolve the matter, and to make a record for review.'" *See Watton,* 164 Ariz. at 328, 793 P.2d at 85 (quoting *Schrock,* 149 Ariz. at 441, 719 P.2d at 1057).

¶ 18 Donald alleged, both in his petition for post-conviction relief and in an attached affidavit, that his trial counsel did not seem to know whether he faced soft, hard, or

flat time, and failed to advise him that he would face a flat time, presumptive ten-year sentence if convicted. To support this assertion, he cited and attached a copy of a transcript showing that the prosecutor also believed he was facing hard time if convicted, not flat time. Donald also alleged that, because his attorney failed to explain the plea agreement, he did not know that the plea agreement offered soft time with the possibility of parole after serving one-half of his sentence, or that it provided a sentence of four to eight years, with six years presumptive.

¶ 19 Donald's sworn assertions and supporting documents set forth a colorable claim that his counsel provided deficient advice regarding the plea agreement and the consequences of conviction.

### B. Prejudice

■ ¶ 20 To establish prejudice in the rejection of a plea offer, a defendant must show "a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer" and declined to go forward to trial. *Curry*, 227 Ill.Dec. 395, 687 N.E.2d at 888; *Williams*, 605 A.2d at 110; *see also Lewandowski*, 949 F.2d at 889.

■ ¶ 21 It is easy to claim but hard to secure such evidence. To mandate an evidentiary hearing, the defendant's challenge must consist of more than conclusory assertions and be supported by more than regret. Yet courts must appreciate that "in cases such as this where the question turns on the motivation of the defendant ... the amount of objective evidence will quite understandably be sparse." *Lewandowski*, 949 F.2d at 889. A defendant may inferentially show prejudice by establishing a serious negative consequence, such as receipt of a substantially longer or harsher sentence than would have been imposed as a result of a plea. *See e.g., Day*, 969 F.2d at 42–43; *Alvernaz*, 8 Cal.Rptr.2d 713, 830 P.2d at 755–56. A defendant might also show that the risks inherent in proceeding to trial so substantially outweighed the benefits of the plea

that proceeding to trial was an unreasonable risk.

■ ¶ 22 We find that Donald satisfied these requirements in this case. The record supports Donald's assertion that the plea bargain could have resulted in actual time served of two to four years, while he faced a presumptive sentence of ten years flat time if convicted. In light of this discrepancy in potential sentence, Donald's sworn statements that he did not understand the plea offer and would have accepted the plea agreement if his trial counsel had adequately advised him are sufficient to state a colorable claim of prejudice.

¶ 23 The State contends that other evidence in the record may contradict Donald's claim—that his prior convictions and experience with the criminal justice system gave him sufficient understanding of sentencing terminology to appreciate the risks of proceeding to trial and the relative advantages of accepting the plea offer, and that his ongoing assertions of innocence and mistaken identity support the inference that he would have refused the plea offer regardless of the advice that he received. Such arguments, however, at most suggest factual disputes that should be resolved by the trial court after a hearing. A petition may be summarily denied only if the court "determines that no remaining claim presents a material issue of fact or law which would entitle the defendant to relief under this rule and that no purpose would be served by any further proceedings...." Ariz. R.Crim. P. 32.6. "[I]f the court finds any colorable claim, it is required ... to make a full factual determination before deciding it on its merits." Ariz. R.Crim. P. 32.6, comment.[5]

¶ 24 In summary, we find that Donald's petition stated a colorable claim of ineffective assistance of counsel by alleging facts that, if true, would entitle him to relief. The trial court therefore abused its discretion in summarily dismissing Donald's claim. We remand to the trial court for a hearing on

---

**5.** The comment to Rule 32.6 cites *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), in support of the quoted proposition. *Townsend* was overruled on other grounds in *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

Donald's ineffective assistance of counsel claim.

### C. Trial Court Approval

¶ 25 To guide the parties and the trial court on remand, we separately address one further issue on the subject of prejudice. In defining what a defendant must prove in order to establish prejudice in the rejection of a plea agreement, courts have differed over the need to show that the trial court would have approved the plea agreement if the defendant had accepted it.

¶ 26 Courts that require such a showing reason that, because a plea bargain is ineffective until approved by the trial court, a defendant suffers no prejudice in rejecting a plea agreement that the court would not have approved. *See, e.g., Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 758. Most courts, however, do not require the defendant to prove this point to establish prejudice. *See, e.g., Cottle,* 733 So.2d at 969; *Curry,* 227 Ill.Dec. 395, 687 N.E.2d at 889–90; *Napper,* 385 A.2d at 524. These courts reason that such a requirement "presents inherent problems of proof," *Curry,* 227 Ill.Dec. 395, 687 N.E.2d at 890 (internal cite omitted), and that it would be "unfair and unwise to require litigants to speculate as to how a particular judge would have acted under particular circumstances." *Id.* (quoting *Turner,* 858 F.2d at 1207). Moreover, the burden of such a requirement "may not be justifiable ... considering the gravity of the constitutional right deprived...." *Cottle,* 733 So.2d at 968.

¶ 27 Finding the latter cases persuasive on this issue, we hold that a petitioner is not required to prove that the trial court would have accepted the plea agreement in order to establish prejudice resulting from counsel's deficient advice.

¶ 28 This holding does not, however, eliminate the ultimate necessity of trial court approval. Rather, if the trial court finds that there has been ineffective assistance of counsel and considers reinstatement of the plea offer as a remedy—a subject we address in the next section of this opinion—the trial court must determine, before ordering reinstatement, that the plea agreement is accept-able under the circumstances. It is more practical, in our opinion, to require current trial court approval of any plea agreement that the parties may enter than to hypothesize whether the plea offer would have been approved by the trial court had the defendant accepted it when it was originally made.

### IV. REMEDY

¶ 29 Whether Donald is entitled to any remedy will remain uncertain until the trial court determines whether he was denied effective assistance of counsel. It is not premature, however, to determine whether the trial court was correct in concluding that, in cases of ineffective assistance arising from rejection of a plea agreement, the court is powerless to fashion a remedy once the defendant has proceeded to trial. The validity of that conclusion has been briefed and submitted for our decision, and we address it in order to correct the trial court's error and to guide the trial court and the parties upon remand. *See, e.g., Standard Chartered PLC v. Price Waterhouse,* 190 Ariz. 6, 40, 43, 945 P.2d 317, 351, 354 (App.1996) (addressing issues briefed and subject to recurrence on remand).

¶ 30 The only remedy that the trial court alluded to in dismissing the petition was an order to reinstate the plea offer. The trial court considered itself powerless to enter such an order. We disagree. We hold that a trial court confronted with a denial of the right to effective assistance of counsel has the power to fashion a suitable remedy which, if necessary and appropriate, may include an order to reinstate the plea offer.

¶ 31 The United States Supreme Court has stated that the remedy for a violation of the Sixth Amendment right to counsel "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Inevitably, however, when a court seeks to redress such an injury, some degree of remedial burden must be borne.

¶ 32 The State, for example, has expended resources in conducting the original

trial, and these resources cannot be recouped. The expense and burden of trial, however, do not excuse the court from providing a remedy for violation of a defendant's Sixth Amendment rights.

¶ 33 Donald has requested that this court order either specific performance of the original plea offer by the State or a new trial. Other courts have ordered each of these remedies, and variations of them. *See, e.g., Alvernaz*, 8 Cal.Rptr.2d 713, 830 P.2d at 760 (holding that prosecutor must either submit previously offered plea bargain to the trial court for approval or must elect, within 30 days, to retry defendant and resume plea negotiation process; trial court not required to approve plea agreement if submitted); *Curry*, 227 Ill.Dec. 395, 687 N.E.2d at 890 (remanding for new trial with opportunity to resume plea bargaining process); *Williams*, 605 A.2d at 111 (allowing defendant opportunity to accept original plea; if he does not do so within 30 days, original conviction and sentence will be reinstated); *Lentowski*, 569 N.W.2d at 762 (remanding for new trial with opportunity for new plea bargain at prosecutor's discretion).

¶ 34 The United States Supreme Court has indicated that specific performance of a plea agreement is a constitutionally permissible remedy. *See Mabry v. Johnson*, 467 U.S. 504, 510 n. 11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Indeed some courts hold that the *most* appropriate remedy is to order the prosecution to reinstate the plea offer, effectively restoring the defendant to the position he or she would have occupied but for the deficient performance of counsel. *See Lewandowski*, 949 F.2d at 889; *Williams*, 605 A.2d at 110–11.

¶ 35 The State contends, however, that to require the prosecutor to offer Donald the previously rejected plea agreement would violate the separation of powers clause, Article III of the Arizona Constitution. Specifically,

the State contends, such an order would usurp the prosecutor's exclusive discretion whether to extend, or refuse to extend, a plea offer to a criminal defendant. *See State v. Larson*, 159 Ariz. 14, 16, 764 P.2d 749, 751 (1988) (state has discretion to proceed or not to proceed once prosecution has been commenced); *accord, State v. Delk*, 153 Ariz. 70, 72, 734 P.2d 612, 614 (App.1986).

¶ 36 The Arizona Constitution "spells out the separation of powers doctrine ... more specifically than does the national document." *State ex rel. Woods v. Block*, 189 Ariz. 269, 275, 942 P.2d 428, 434 (1997).[6] Yet Arizona courts have recognized that government necessarily entails some blending of powers and that "absolute independence of the branches of government and complete separation of powers is impracticable." *J.W. Hancock Enterprises Inc. v. Arizona State Registrar of Contractors*, 142 Ariz. 400, 405, 690 P.2d 119, 124 (App.1984). Thus, we have stated, "the utility of the doctrine is preserved not by mechanistic formulas, but by ad hoc determinations focused on insuring sufficient checks and balances to preserve each branch's core functions." *Id.*

¶ 37 In a series of cases beginning with *Hancock*, the Arizona courts have repeated and refined a group of factors to be considered in reviewing a claim that an act by one department would usurp the powers of another. These factors, our supreme court has commented, "provide[ ] the necessary flexibility yet still maintain[ ] the goal of the separation of powers doctrine." *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 211, ¶ 37, 972 P.2d 179, 195 (1999). The four factors to be considered are "(1) the essential nature of the power exercised; (2) the ... degree of control [that one branch assumes] in exercising the power [of another]; (3) the ... objective [of the exercise]; (4) the practical consequences of the action." *Id.* (citing *Block*, 189 Ariz. at 276, 942 P.2d at 435); *see also Citizens Clean Elections Comm'n v. Myers*, 196 Ariz. 516, 523–24,

---

**6.** Article III of the Arizona Constitution provides:
   The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

¶ 30, 1 P.3D 706, 713–14 (2000); *Hancock,* 142 Ariz. at 405–06, 690 P.2d at 124–25.

¶ 38 We apply this four-step analysis to the question whether a court, without violating separation of powers, may order the prosecution to reinstate a plea offer if the court finds reinstatement necessary to remedy a deprivation of effective counsel. We begin by considering the essential nature of the power to be exercised. Here, however, there is not one essential power but two: The first is the power of the prosecutor to decide whether to plea bargain and on what terms; the second is the power of the courts to fashion a remedy for a constitutional deprivation. The narrow question is whether a court may impinge upon the first power if necessary to accomplish the second.

¶ 39 Discretion over plea bargaining is a core prosecutorial power, but not one without constraints. It is well established, for example, that the courts may intervene to reinstate a plea offer that the State has withdrawn for vindictive reasons. *See Turner v. Tennessee,* 940 F.2d 1000 (6th Cir.1991); *see also State v. Martin,* 139 Ariz. 466, 481, 679 P.2d 489, 504 (1984) (prosecutor may refuse to plea bargain for reasons of policy but not out of animus).

¶ 40 Here there is no suggestion of prosecutorial vindictiveness; there is, however, a common element of remedial necessity. Specifically, in the circumstance that we consider, the State, when it engages in plea bargaining, initiates "a critical stage in the criminal process" that invokes a defendant's constitutional right to effective assistance of counsel. *Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 753. And in so doing, in our opinion, the State subjects itself, where necessary, to the court's remedial authority. We do not hold that a court, when it pleases, may order the State to offer a plea agreement entirely of the court's concoction. Such a holding would surely violate separation of powers. It is altogether different, however, to hold that a court has remedial power, in order to redress a denial of effective assistance in plea bargaining, to return the parties to the status quo ante by ordering the State to reinstate an offer that the State had earlier considered and approved. Such a holding,

in our opinion, when preceded by the sort of hearing we discuss below, entails a rare, limited, and justifiable encroachment on the prosecutor's power.

¶ 41 A second consideration is the degree of control to be exercised by the department accused of usurping power. Here, coercion, the essence of any court order, is undeniably involved. Yet for the reasons set forth in the several preceding paragraphs, and in light of the hearing that we discuss in the paragraphs that follow, we do not believe that the element of coercion renders the remedy unconstitutional.

¶ 42 A third factor is the objective of the exercise. The objective of a reinstatement order, under the circumstances that we contemplate, is not a general undertaking to subordinate the prosecutor's plea bargaining authority to the discretion of the courts; rather, the objective is case specific and remedial. A court's essential function is to provide a remedy in the context of an individual case, and a restoration of the parties to their original position is a remedy well established in other contexts.

¶ 43 The fourth consideration is the practical effect of the exercise of power. The practical effect of a reinstatement order is substantially ameliorated, in our opinion, by the hearing that must be held before any reinstatement order may emerge. Specifically, if a court finds that a deprivation of effective counsel has resulted in the rejection of a plea agreement, the court must conduct a hearing in order to determine the remedy appropriate to the case. At such a hearing, if a reinstatement order is a contemplated remedy, the prosecution must be given the opportunity to present any facts and considerations that lead it to oppose reinstatement of the plea. For instance, if the State, without vindictiveness, can show the emergence of facts or circumstances after the original plea offer that reflect unfavorably upon the defendant, it may persuade the court that a reinstatement order is inappropriate. *See Alvernaz,* 8 Cal.Rptr.2d 713, 830 P.2d at 759 (criticizing specific performance of plea agreement as an undue limitation on the trial judge's sentencing discretion when new infor-

mation has emerged); *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)) (increased sentence following successful appeal constitutionally permissible if "events subsequent to the first trial ... have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities' ").

¶ 44 In summary, when all relevant factors are balanced, we do not find that a reinstatement order would so significantly encroach on the executive department as to amount to an unconstitutional usurpation of power. If the essential purpose of separation of powers doctrine is to "ensure[ ] 'sufficient checks and balances to preserve each branch's core functions,' " *San Carlos Apache Tribe*, 193 Ariz. at 211, ¶ 37, 972 P.2d at 195 (quoting *Hancock*, 142 Ariz. at 405, 690 P.2d at 124), then the process we have outlined should provide sufficient checks and balances to serve that end. Specifically, we hold that a court, without violating separation of powers, may order the prosecution to reinstate a plea offer if, after conducting a hearing and permitting the State to present all relevant considerations, the court finds reinstatement necessary to remedy a deprivation of effective counsel.

¶ 45 If renewal of the plea offer is not appropriate, the probable alternative remedy will be to order a new trial.[7] *See Curry*, 227 Ill.Dec. 395, 687 N.E.2d at 890; *Lentowski*, 569 N.W.2d at 762; *Napper*, 385 A.2d at 524. Pending a new trial, the State and defendant should be free to negotiate a different plea agreement. Any plea agreement, however, including the one originally offered, must be subject to the approval and acceptance of the court. *See* Rule 17.4(d), Ariz. R.Crim. P. *See also Espinoza v. Martin*, 182 Ariz. 145, 894 P.2d 688 (1995).[8]

## V. CONCLUSION

¶ 46 To reiterate our holding, (1) a defendant suffers a constitutionally significant injury who loses a favorable plea bargain as a consequence of ineffective assistance of counsel; (2) the loss of a favorable plea agreement due to ineffectiveness of counsel is not relieved by the defendant's receipt of a fair trial; and (3) the court has power to fashion a remedy for such a deprivation, including, if warranted under the circumstances, an order to reinstate the original plea offer.

¶ 47 Because we find that Donald has presented a colorable claim of ineffective assistance of counsel, we reverse the trial court's summary dismissal of his petition for post-conviction relief and remand this case for a hearing on the merits of the petition. If the trial court finds the petition to have merit, the court shall conduct a further hearing to determine the appropriate relief.

CONCURRING: THOMAS C. KLEINSCHMIDT, Judge.

BERCH, Judge, concurring in part and dissenting in part

¶ 48 I concur in the opinion, but write separately because I disagree with the majority's suggestion that the trial court may order the prosecution to reinstate a plea agreement to remedy a violation of a defendant's right to counsel at the plea bargaining stage of the proceedings. When or whether to offer a plea agreement is, as the majority acknowledges, a "core prosecutorial power," *see supra* ¶ 39, a matter committed to the sound discretion of the prosecution, an executive branch agency. *See State v. Larson*, 159 Ariz. 14, 17, 764 P.2d 749, 752 (1988) (quoting *State v. Jones*, 142 Ariz. 302, 305, 689 P.2d 561, 564 (App.1984) ("the power to divert the prosecution of a case is and always has been an executive function")). I therefore believe that ordering the prosecution to offer a particular plea agreement transgresses too deeply into the prosecutorial realm and

---

**7.** Conversely, under certain circumstances, a court might conclude that reinstatement is the fairest remedy, though the defendant prefers a new trial. For example, if the passage of time, the erosion of evidence, or the disappearance of witnesses has impaired the State's ability to retry the case, it would be unfair to order a new trial.

In such a case, the defendant's acceptance of the original plea offer might be the sole avenue of relief.

**8.** *See supra* ¶ 28.

usurps too great a portion of the function of the executive to comport with separation of powers principles. *See Larson*, 159 Ariz. at 17, 764 P.2d 'at 752 (citing *J.W. Hancock Enters. v. Registrar of Contractors*, 142 Ariz. 400, 405–06, 690 P.2d 119, 124–25 (App. 1984)).

¶ 49 As the majority notes, the efficient functioning of government may at times best be served by blending the functions of the branches of government. *See supra* ¶ 36. Nonetheless, while allowing blending, Arizona's Constitution prohibits usurpation, or too deep an intrusion by any one branch into the functions of another branch. *See State ex rel. Woods v. Block*, 189 Ariz. 269, 276, 942 P.2d 428, 435 (1997). Our supreme court has framed the relevant test for determining when the incursion exceeds permissible limits as whether "one branch of government 'is exercising "the powers properly belonging to either of the others." ' " *Id.* (quoting *Hancock*, 142 Ariz. at 405–06, 690 P.2d at 124–25, and Ariz. Const. art. 3). If the court, a judicial branch entity, were to impose a particular plea agreement, an executive function, it would be exercising powers "properly belonging to [the executive, one] of the other[ branches of government]." I therefore believe that the proposed remedy of ordering reinstatement of a plea agreement is an improper usurpation rather than a permissible blending of governmental powers.

¶ 50 The majority relies on federal cases suggesting that the court may recommend reinstatement of a plea. *See, e.g., Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (allowing reinstatement of a plea agreement to remedy prosecutorial misconduct). Although perhaps permissible under the federal constitution, which contains no explicit separation of powers provision, ordering reinstatement cuts too deeply into the prosecution's domain to comport with Arizona's Constitution, which contains an explicit separation of powers clause. *See* Ariz. Const. art. 3; *see also Mecham v. Gordon*, 156 Ariz. 297, 300, 751 P.2d 957, 960 (1988) ("Nowhere in the United States is this system of structured liberty [*i.e.*, separation of powers] more explicitly and firmly expressed than in Arizona."). The majority does not suggest, nor could it in light of federalism concerns, that to fashion a remedy for a violation of a defendant's federal Sixth Amendment rights Arizona need sacrifice its own constitution, if other remedies are available.

¶ 51 The trial court is not remediless. The trial court may order a new trial, providing the parties the opportunity to renew plea negotiations. Moreover, courts have powers, specified and inherent, with which to encourage the prosecution's cooperation and assistance in remedying a violation of a defendant's constitutional rights, even when the violation is not the fault of the prosecution. Such encouragement includes the ultimate power to dismiss the case if an appropriate resolution, such as reinstatement of a plea agreement, is not voluntarily forthcoming. *Cf.* Ariz. R.Crim. P. 24.2 (court's power on motion to vacate a conviction obtained in violation of Arizona and United States Constitutions), 24.1 (court's power to order new trial); *New York v. United States*, 505 U.S. 144, 149, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (holding that "while Congress has substantial power under the Constitution to *encourage* the States to [act in a particular way], the Constitution does not confer upon Congress the ability simply to *compel* the States to do so") (emphasis added). *See generally* Felix F. Stumpf, *Inherent Powers of the Courts: Sword and Shield of the Judiciary*, 4–5 (1994) (citing cases). Similarly, while the court may encourage executive officers who have not committed any misconduct to act in a particular way, it may not compel them to do so without violating separation of powers principles.

¶ 52 I therefore agree with my colleagues in all respects set forth in the majority opinion, except that I believe that for the judicial branch to order executive branch officers to offer any particular plea agreement in any particular case intrudes too deeply on the function of the executive branch.